1
2
3
4
5

**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
2404 Broadway, Suite 150
San Diego, California 92102
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

6
7
8
9

**OLYMPUS LAW CORPORATION**
George C. Panagiotou, Esq. (SBN: 263172)
2404 Broadway, Suite 100
San Diego, CA 92102
Telephone: (858) 300-0033
Facsimile: (858) 408-2939

10
11

*Attorneys for Plaintiff*,
Mauro Calvillo Aguila

12

13
14

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

15

**MAURO CALVILLO AGUILA,**

16

**Plaintiff,**

17

**v.**

18
19
20

**AMERICAN HONDA FINANCE CORPORATION and EQUIFAX INFORMATION SERVICES LLC,**

21

**Defendants.**

22
23
24
25
26
27
28

Case No.:

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

1.) **THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND**

2.) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.**

**JURY TRIAL DEMANDED**

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

## INTRODUCTION

1.   The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.   Plaintiff **MAURO CALVILLO AGUILA** ("Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants **AMERICAN HONDA FINANCE CORPORATION ("AHFC," "Furnisher-Defendant," and "Defendants"), and EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX," the "Credit Bureau," or "Defendants")** with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g) and Defendant's failure to correct such, which Defendant knew or should have known was erroneous and which caused Plaintiff damages.

3.   Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

### JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Riverside, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

### PARTIES

12. Plaintiff is a natural person who resides in the City of Perris, County of Riverside, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

13. Defendant AHFC is a corporation whose primary corporate address is in the City of Torrance, in the State of California, and is authorized to do business in the State of California.

14. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

15. AHFC is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

16. Plaintiff is informed and believes, and thereon alleges, that AHFC in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are each therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

17. EQUIFAX is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

18. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

## GENERAL ALLEGATIONS

19.   At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

20.   Furthermore, Defendant conducted business within the State of California at all times relevant.

21.   On or about August 10, 2020, Plaintiff filed for a no-asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California in Riverside. Plaintiff's case was assigned Case Number 6:20-bk-15625-MH (the "Bankruptcy").[1]

22.   Plaintiff's Bankruptcy successfully discharged on November 30, 2020, and Plaintiff's account and debt with AHFC was included in Plaintiff's discharge.

23.   However, AHFC reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

24.   The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[2]

25.   Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

26.   The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

27.   CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

28.   The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

---

[1] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See*, *Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

[2] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

29. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

30. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

31. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured accounts included in the bankruptcy, including AHFC's account, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero" (i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

32. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs, including EQUIFAX, have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have

---

[3] *White v. EQUIFAX Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. EQUIFAX Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. EQUIFAX Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

been discharged in bankruptcy.

33.  These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been discharged.

34.  These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

35.  Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4]

///

///

---

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. EQUIFAX Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

36. Indeed, the frequency of cases in which debtors had complained of the failure to properly report accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[5]

37. However, despite this knowledge AHFC consistently followed faulty and deceptive procedures in their credit reporting practices for post-bankruptcy consumers like Plaintiff, EQUIFAX continued to fail to adopt reasonable procedures to eliminate the reporting errors that it knew or should have reasonably been aware of.

38. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[6]

39. Accordingly, EQUIFAX's conduct was willful and reckless disregard of their rights and obligations under the FCRA.

---

[5] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

[6] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

40. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's credit reports in respect to AHFC's account successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

41. Instead, Defendants reported that the *current* (pay) status of the debts were delinquent, "Charged Off" i.e. still legally collectable, "Past Due", or otherwise still legally owed in their pre-Bankruptcy form as opposed to "Discharged/included in Bankruptcy" with a $0 balance.

42. The failure to report the correct status of "Discharged in Bankruptcy" inaccurately and misleadingly suggested that Plaintiff still has a personal legal responsibility to pay the alleged debts to AHFC, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

43. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to EQUIFAX, which ultimately leads to objective credit evaluations and scores for consumers.

44. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[7]

///

///

///

---

[7] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

45. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like AHFC would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the accounts reported accurately.

46. Furthermore, EQUIFAX's policies and procedures for maintaining and operating their internal databases was not reasonable, because they allowed the reporting of patently inaccurate and materially misleading information by AHFC, despite having knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

47. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to his credit rating.

48. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

49. This has made Plaintiff unable and therefore averse to apply for credit because his credit score remains extremely low.

50. Plaintiff has also refrained from obtaining further credit knowing that Defendants' inaccurate reporting is appearing on his credit report.

51. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

52. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

53. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

54. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

55. Namely, Plaintiff has been precluded from the fresh start that Plaintiff desperately needs.

## AHFC
### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 41140* (THE "ACCOUNT")

56. In a EQUIFAX Credit Report dated February 9, 2021, AHFC reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Pay Status: Charged Off
- Balance Amount: $8,001
- Amount Past Due: $8,001

57. There was no notation, status update, or any other indication in the tradeline as it was reported to the Credit Bureaus that this Account was included in or discharged in Plaintiff's Bankruptcy.

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

58. It was inaccurate and materially misleading for AHFC to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations as of August 2020, because Plaintiff filed for Bankruptcy on August 19, 2020, at which point the automatic stay went into effect and severed AHFC's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

59. The balances owing and past due status notations by FORD post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because AHFC's reporting deviated from Metro 2 reporting instructions in these respects.

60. However, Plaintiff did not incur new debt with AHFC during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with AHFC was discharged in the Bankruptcy.

61. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for AHFC to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

62. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on November 30, 2020. Defendants *each* received notice of the successful discharge through the Bankruptcy Noticing Center on or around November 30, 2020 via first class mail from the Bankruptcy Noticing Center.

63. Rather than using the bankruptcy information sent specifically to Defendants to accurately update Plaintiff's Account on Plaintiff's credit reports, which Defendants knew or should have known existed, Defendants continued reporting inaccurately on Plaintiff's credit reports. These notices from the

bankruptcy court were sufficient to inform Defendants that a past due status with an outstanding balance amount would be "incomplete or inaccurate" and "materially misleading." *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1109 (E.D. Cal. 2017).

64. AHFC could have simply reviewed the bankruptcy records discussed above and received by AHFC and recognized that their reporting of balance owing with no notation of the bankruptcy discharge following the Bankruptcy was inaccurate, misleading, and outdated. AHFC should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance. Instead, AHFC chose to ignore their duty to update their obsolete reporting.

65. Therefore, AHFC's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

66. Through this conduct, AHFC violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that AHFC knew or should known was inaccurate and materially misleading.

67. Furthermore, EQUIFAX's policies and procedures for maintaining and operating their internal databases were not reasonable, because they allowed the reporting of patently inaccurate and materially misleading information by AHFC, despite having knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge.

68. Specifically, EQUIFAX could have easily ascertained that the AHFC account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, and/or abiding by their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

69. Moreover, Trans Union LLC ("TRANSUNION")—another national credit bureau who was part of the *White v. EQUIFAX Info Solutions, Inc. et al.* class action—accurately reported the Account as being "Discharged/included in Bankruptcy" with no balance owing during the same reporting timeframe. TRANSUNION had access to the exact same information as EQUIFAX and reported accurately.

70. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

71. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

72. *Alternatively*, upon information and belief, AHFC properly updated the Account's status as "Included/Discharged through Bankruptcy" with a zero balance owing following Plaintiff's Bankruptcy. However, EQUIFAX unilaterally and inaccurately reported delinquencies and balances owing following Plaintiff's Bankruptcy discharge, despite AHFC instructing EQUIFAX to report the Account accurately.

73. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

74. Therefore, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

///
///
///
///
///
///

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681 ET SEQ.

### [AGAINST EQUIFAX]

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

77. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

78. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

## COUNT II

### VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

### CAL. CIV. CODE § 1785.1 ET SEQ.

### [AGAINST ALL DEFENDANTS]

79. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

81. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

82. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

83. Because Furnisher-Defendant is a partnership, corporations association, or other entity, and is therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher-Defendant is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Thus, Furnisher-Defendant violated Cal. Civ. Code § 1785.25(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and

- Any and all other relief the Court deems just and proper.

Dated: June 2, 2021.                          Respectfully submitted,

**C.O. LAW, APC**


By: /s/ Clark Ovruchesky
CLARK OVRUCHESKY, ESQ.
ATTORNEY FOR PLAINTIFF

///

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

**TRIAL BY JURY**

84.   Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 2, 2021                         Respectfully submitted,

                                            **C.O. LAW, APC**

                                      By: /s/ Clark Ovruchesky
                                            CLARK OVRUCHESKY, ESQ.
                                            ATTORNEY FOR PLAINTIFF

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102